**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

JIMMY SERRANO, Individually and on Behalf of All
Others Similarly Situated,

                             Plaintiffs,

       -against-

C.R. LANDSCAPING AND TREE SERVICE CORP.,
et. al.,

                             Defendant.

-------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

20-CV-4372 (GRB) (ST)

**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

Plaintiff Jimmy Serrano, in his individual capacity and on behalf of others similarly situated, commenced this action against C.R. Landscaping and Tree Service Corp. and Candelario Rivera (together, "Defendants") on September 17, 2020.  Plaintiff alleges that Defendants violated the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, as well as multiple sections of the New York Labor Law ("NYLL") by failing to pay Plaintiff and others minimum wage and overtime as required by both statutes, unlawfully retaliating under the FLSA, and failing to pay spread-of-hours pay and furnish required annual wage notice and periodic wage statements as required by the NYLL.  Before the Court is Plaintiff's motion for conditional certification of this case as a collective action under the FLSA and Plaintiff's motion to distribute the proposed notice to all "non-exempt" employees of the Defendants.  For the following reasons, I recommend Plaintiff's motion be GRANTED IN PART AND DENIED IN PART.

1

# BACKGROUND

Defendant C.R. Landscaping and Tree Service Corporation ("C.R. Landscaping") is a domestic corporation incorporated in New York State. Am. Compl. ¶ 8, ECF No. 17.  Defendant Candelario Rivera is a natural person, alleged by Plaintiff to be the owner of C.R. Landscaping and responsible for all of C.R. Landscaping's employment and payroll procedures. Pl. Br., 3, ECF No. 19-9.

Plaintiff alleges that he worked for the Defendants from March 2017 until January 2020. Serrano Aff. ¶ 3, ECF No. 19-7.  While employed by Defendants, Plaintiff claims he worked as a laborer, performing tree removal and outdoor maintenance. *Id.*  He claims he was hired by Mr. Rivera and that, when he was hired, he was never given a wage notice. *Id.* at ¶¶ 4, 5.

Defendants deny that C.R. Landscaping ever employed Plaintiff. Def. Opp. Br., 2, ECF No. 22.  Instead, Defendants claim C.R. Tree and Lawn Service Corp., a different corporation, employed Plaintiff, but only as a landscaper and not in tree maintenance. *Id.*  Plaintiff's counsel, in his reply brief, writes that he could find no record with the New York Department of State of any corporation by that name. Pl. Repl. Br., 3, ECF No. 23.  Defendants also dispute the timeframe during which Plaintiff worked.  They claim Plaintiff only worked for Defendants from early 2019 until September of 2019. Def. Opp. Br., 2, ECF No. 22.

Plaintiff claims that while working for Defendants, he generally worked Monday through Saturday, with some Sunday work on occasion. Serrano Aff. ¶ 10, ECF No. 19-7.  He alleges he would routinely work from 6 AM until approximately 9 PM and was paid a flat rate every Saturday of $80 in cash per day regardless of how many hours he worked. *Id.* at ¶¶ 10, 12-14. He alleges he personally observed the other workers, approximately 8 to 12 at a time, get paid in cash on Saturdays, just as he was. *Id.* at ¶¶ 14, 16.  Employees were allegedly paid by Mr.

Rivera, who called them one at a time, asked how many days they worked, and paid them accordingly. *Id.* at ¶ 14. Plaintiff claims that this was part of a practice by Defendants of hiring undocumented Latino workers to avoid paying proper wages and taxes. *Id.* at ¶ 17. He says that Defendants did also hire three documented workers, and those workers told Plaintiff that once they asked to be paid on the books, they were terminated. *Id.* at ¶ 18.

Defendants deny these allegations. They claim Plaintiff could not have worked the hours he alleges. They claim to do so would run afoul of noise regulations and that they did not have enough work to keep employees working such long hours. Def. Opp. Br., 2-3, ECF No. 22.

Plaintiff alleges he had a conversation with another worker he befriended, a man who he only refers to as "Mr. A." He says during this conversation Mr. A told him he too was paid below the minimum wage and never received an overtime premium, despite working the same schedule as Plaintiff. Serrano Aff. ¶¶ 19-21, ECF No. 19-7.

Plaintiff has also submitted the affidavit of Arnoldo Paredes to support his claims. Mr. Paredes alleges he too worked for Candelario Rivera and C.R. Landscaping, from March 2018 until approximately May 2020. Paredes Aff. ¶¶ 2-3, ECF No. 19-8. Mr. Paredes also corroborates many of Plaintiff's claims, claiming he too did not receive a wage notice or any paperwork when he was hired, worked Monday through Saturday, and generally worked from 6 AM to 9 PM. *Id.* at ¶¶ 5, 9. Mr. Paredes says, when he started, he was paid a flat rate of $140 per day regardless of hours worked, and that increased to $150 per day in March of 2020. *Id.* at ¶ 11. He also claims these payments would occur on the Saturday of every week. *Id.* at ¶ 12, 14. Mr. Paredes attests that he and the Plaintiff became friends while working together and would complain to each other about the long hours, what they saw as a hostile work environment, and

their low wages. *Id.* at ¶ 17.  Both Plaintiff and Mr. Paredes say they were not given lunch breaks on a regular basis. *Id.* at ¶ 21; Serrano Aff. at ¶ 27, ECF No. 19-7.

Plaintiff says he was fired by Mr. Rivera after complaining to him about his hours and pay. Serrano Aff. ¶ 22, ECF No. 19-7.

Defendants submitted, in opposition, the affidavit of Candelario Rivera, one of the Defendants, who says that Mr. Serrano's allegations as to his work schedule are "utterly insane and a complete lie." Rivera Aff. ¶ 20, ECF No. 22-1.  He claims Mr. Serrano only worked as a landscaper and did not perform tree removal services. *Id.* at ¶ 23.  He also claims Mr. Serrano was not fired in retaliation but because "multiple customers complained…about Serrano's work…[He] was terminated because of his terrible work ethic and performance." *Id.* at ¶¶ 24, 26.

## LEGAL STANDARD

Under the FLSA, an employee may sue on behalf of herself and other employees who are "similarly situated." 29 U.S.C. § 216(b).  Those "similarly situated" employees may opt-in to a collective action brought under the FLSA, and therefore become plaintiffs, by filing a written consent form. *Varghese v. JP Morgan Chase & Co.*, No. 14-CV-1718 (PGG), 2016 WL 4718413, at *5 (S.D.N.Y. Sept. 9, 2016); *see* 29 U.S.C. § 216(b).

The conditional certification of an FLSA collective action is a discretionary exercise of the court's authority; it is useful as a case management tool, facilitating the dissemination of notice to potential class members. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)).  Because it is discretionary, a motion for conditional certification involves a "far more lenient" standard than a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Feng v. Soy Sauce LLC*, No. 15-CV-3058 (ENV) (LB), 2016 WL 1070813, at *2 (E.D.N.Y. Mar. 14, 2016).

Courts in the Second Circuit apply a two-step process to determine whether an action should be certified as an FLSA collective action. *Myers*, 624 F.3d at 554–55.  In the first step, the Court looks at the pleadings, affidavits, and declarations to determine whether the Plaintiff and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. *Id.* at 555.

The first step requires only a "modest factual showing" that the Plaintiff and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citations omitted).  The standard of proof is low "because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original).  Participants in a potential collective action need not have held identical jobs or been subject to identical treatment; rather, conditional certification is appropriate where all putative class members are employees of the same enterprise and allege the same types of FLSA violations. *See Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011).

If the Plaintiff satisfies this first step and is granted conditional certification, the Court will then, on a fuller record, determine whether the actual opt-in plaintiffs are in fact "similarly situated" to the named Plaintiff. *Myers*, 624 F.3d at 555.  If the record reveals that the opt-in plaintiffs are not, then the Court may decertify the collective action and the opt-in plaintiffs' claims could be dismissed without prejudice.  *Id.*

Despite the "low burden" at the first stage, a "plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice." *Reyes v. Nidaja*, LLC, No. 14-CV-9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015).  "Declarations submitted in connection with motions for certification

must allege facts showing such a nexus, not mere statements that others are similarly situated." *Id.*; *see also Myers*, 624 F.3d at 555.

An affidavit from the Plaintiff may provide the "modest factual showing" necessary to sustain approval of conditional certification. Many courts, including this one, have found that allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class." *Hernandez v. NGM Mgmt. Grp. LLC,* No. 12-CV-7795, 2013 WL 5303766, 2013 U.S. Dist. LEXIS 134922 at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases).

However, courts in this circuit have consistently held that "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes v. Nidaja, LLC,* No 14-CV-9812, 2015 WL 4622587, 2015 U.S. Dist. LEXIS 101728 at *2 (S.D.N.Y. Aug. 3, 2015). This is to avoid conclusory allegations of a common plan or scheme, which are "impossible for a court to test or for defendants to attempt to refute." *Huer Huang v. Shanghai City Corp.*, No. 19-CV-7702, 2020 U.S. Dist. LEXIS 193074 at *31 (S.D.N.Y. Oct. 19, 2020). Courts have found a plaintiff fails even the minimal standard of conditional FLSA certification where allegations of factual nexus and common plan or scheme are unspecific. *See Khan v. Airport Mgmt. Servs.*, No. 10-CV-7735, 2011 WL 5597371, 2011 U.S. Dist. LEXIS 133134 at *3 (S.D.N.Y. Nov. 16, 2011).

In *Shibetti v. Z. Rest., Diner & Lounge, Inc.*, this Court found the Plaintiffs did not meet the conditional certification standard where they alleged only that they "observed the [Defendant] treating other employees the same way" but did not "provide any names, dates, or circumstances to give a factual basis for their statements." *Shibetti v. Z. Rest., Diner & Lounge,*

*Inc.,* 2019 WL 11623937, 2019 U.S. Dist. LEXIS 150715 at *11 (E.D.N.Y. Sept. 3, 2019). In that case, Plaintiffs did not "offer '*any* detail as to a *single* such observation'…[they did not] state that they talked with similarly-situated persons…[or] provide any affidavits or declarations from potential class members." *Id.* at *11-12 (emphasis in original) (*quoting Sanchez v. JMP Ventures, LLC,* 18-CV-7264, 2014 WL 465542, 2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. Jan. 27, 2014).

Where a plaintiff offers up non-conclusory evidence of a common plan or scheme in her affidavit and additionally offers up affidavits from similarly situated prospective class member supporting her allegations of common plan or policy to violate the FLSA, courts are more likely to find the conditional certification standard satisfied. In *Valerio v. RNC Industries,* this Court found conditional certification appropriate where the Plaintiff alleged violations of the FLSA, alleged a common policy or plan by Defendants, alleged he spoke to other non-managerial employees who had similar experiences, and submitted a declaration by one potential opt-in plaintiff who alleged facts consistent with the Plaintiff's alleged plan or scheme. *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 68 (E.D.N.Y. 2016).

## DICUSSION

At the outset, Plaintiff will need to resolve the dispute over which corporate entity employed Plaintiff and Mr. Paredes. Plaintiff will need to ensure the appropriate corporate entity is named in his complaint, and all recommendations set forth in this report and recommendation should apply to whatever corporate entity in fact employed Plaintiff.

### I.     Conditional Certification Is Appropriate Under the FLSA

Here, Plaintiff has alleged sufficient facts to make the "modest factual showing" required at this stage to show that Plaintiff and potential opt-in plaintiffs "together were victims of a

common policy or plan that violated the law." *See Hernandez*, 2013 U.S. Dist. LEXIS 134922 at *3; *Myers*, 624 F.3d at 555.

Plaintiff alleges that Defendants engaged in a pattern of hiring workers and paying them by day instead of by hour, resulting in a wage below the minimum required by the FLSA. *See* Pl. Am. Compl, ECF No. 17. If sufficiently supported, that allegation alone would provide the required factual nexus between Plaintiff's claims and the claims of the collective: whether they were all subject to a common payment practice of flat daily payment, which resulted in pay below that required under the FLSA. There is an additional allegation that Defendants had a policy or practice of requiring their workers to work overtime without paying them the overtime premium required under the FLSA. That adds an additional factual nexus of whether Plaintiff and the collective were compensated at overtime premium rates for overtime hours.

The question in this case is not whether Plaintiff has alleged a common plan or scheme (in his affidavit, he alleges unequivocally "[The defendant] hires undocumented workers so he does not have to pay taxes, or pay the proper wages" (Serrano Aff. ¶ 17, ECF No. 19-7)), it is whether Plaintiff has alleged sufficient facts to render such allegations non-conclusory.

Defendants argue he has not. Defendants contend that Plaintiff has not sustained his burden because he did not show how much some of the other potential opt-in employees made, did not reveal the full names of the other potential opt-in employees besides Mr. Paredes, and did not provide "Mr. A's" job duties to show he was similarly situated to the Plaintiff. Def. Br., 6, ECF No. 22. Defendants also contend that Mr. Paredes' affidavit does not support Plaintiff's claim because it simply "parrots a nearly identical declaration" to that of the Plaintiff. *Id.* at 7.

To resolve this question, I must examine the allegations put forward by the Plaintiff in his complaint and affidavit and the allegations of Mr. Paredes to determine whether those assertions

constitute a non-conclusory modest factual showing of a common plan or scheme against a similarly situated group of individuals.

In his complaint, Plaintiff alleges he worked for Defendants as a laborer from 6 a.m. until approximately 9 p.m. six to seven days a week. Pl. Am. Compl. ¶¶ 24-25, ECF No. 17.  He says he was paid a flat rate of $80 per day worked, regardless of how many hours he worked each day, and that that payment structure violated the FLSA. *Id.* at ¶ 26-27.  He also claims he was retaliated against for questioning such a payment structure when Defendants terminated him in violation of federal law. *Id.* at ¶ 29.  As to the collective, he claims the Defendants knowingly and willfully operated their business with the practice of not paying workers legal hourly wages or overtime in violation of the FLSA. *Id.* at ¶ 31.  Plaintiff has certainly pled in his complaint sufficiently non-conclusory facts regarding his individual claims, but his only claim regarding the proposed collective is conclusory: that the Defendants had a policy of doing this.

However, the complaint is not all Plaintiff provided.  Plaintiff provided his own affidavit as well.  Within that affidavit, Plaintiff alleges further facts with regards to similarly situated potential opt-in plaintiffs.  He alleges that in his time at the company, the other workers had similar schedules to his. Serrano Aff. ¶ 10, ECF No. 19-7 ("All of the workers would arrive at around 6 a.m.…We worked until about 9 p.m. every workday").  He also provides details on not only how he was paid, but how the other workers were paid as well.  He says, "I was paid every Saturday at the end of the week for all of the days I worked…in cash…All of the other workers would also get paid by Mr. Rivera on Saturdays as well. He would call the workers one at a time, and ask how many days he worked for the week and pay them accordingly." *Id.* at ¶¶ 13-14.  He claims to have observed the payment of the other workers. *Id.* at ¶ 16.  He also claims a pattern

of retaliation.  He says he had discussions with three other workers who told him they were terminated when they asked Mr. Rivera to be paid "on the books." *Id.* at ¶ 18.

Plaintiff also claims he had a conversation with another worker, a man from Central America, who he refers to only in his affidavit as "Mr. A." *Id.* at ¶19.  He says Mr. A told Plaintiff he was paid in cash on Fridays, that Mr. A worked the same schedule as Plaintiff, and that Mr. A informed Plaintiff he was paid below the minimum wage and never received overtime. *Id.* at ¶¶ 19, 21.

Defendants take umbrage at the anonymity of "Mr. A" in Plaintiff's affidavit. They note that "the nicknamed employee ('Mr. A') in Serrano's declaration [did not] submit their own declarations in support nor did they file opt in notices to the litigation." Def. Opp. Br., 7, ECF No. 22.  They also write, in reference to this allegation appearing only in Plaintiff's amended complaint, "Plaintiff suddenly recalled a co-worker whom he cannot remember the name of, whom he refers to as 'Mr. A' who was not paid minimum wage and never received overtime…[Serrano] cannot recall the name of the plaintiff but he can recall specific conversations regarding the rate(s) of pay." *Id.* at 9.

Where a Plaintiff bases his collective allegations only on conversations or observations, he is required to be specific about the *content* of those conversations or observations. *See Reyes*, 2015 WL 4622587, at *3 (citing cases) ("Where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations.") (emphasis added). While Defendant is correct this Court has found providing full names of workers involved in the observations and conversations cited by Plaintiff helps support conditional certification, such identification is not a requirement.  It may well be that, by not naming Mr. A and providing

minimal detail as to the contents and circumstances of his conversation with Mr. A, Plaintiff would not be able to sustain his motion for conditional certification based upon his conversation with Mr. A alone.  But here, Plaintiff has not based his motion just on his conversation with Mr. A, instead also including his own specific allegations as to other observations of and conversations with other workers as well as an affidavit from a named potential opt-in plaintiff, Arnoldo Paredes, which specifically details his similar experience while working at the same company at the same time Plaintiff did.

As to Defendants' thinly veiled allegations that Mr. A does not exist, the Court should take no position.  At this point in the Court's analysis, the Court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013).  We presume at this stage that the affidavits, made under penalty of perjury, are true and merely assess, based on those and the complaint, whether Plaintiff has pushed the allegations beyond conclusory and met the low burden for conditional certification.

Further, there may be good reason why Plaintiff does not name Mr. A in his complaint, instead providing vague identifying details.  Plaintiff is alleging the Defendants had a practice of hiring undocumented immigrants, a vulnerable group, specifically so that they could pay them below what was required by federal and state law without repercussions.  Plaintiff is also alleging that when four different employees complained about the payment structure, including himself, each was terminated.  Whether those allegations are true or not will be litigated as this case proceeds, but if Plaintiff believes Defendants seek retribution against those who complain about their payment structures, he may have not named "Mr. A" to protect that individual from retribution, not because he does not exist or because Plaintiff is forgetful. A blanket refusal to

11

consider unnamed sources of information in an FLSA conditional certification analysis could have the effect of improperly removing those fearful of retribution from the ambit of FLSA legal protections altogether.

Plaintiff also submits, in support of his motion, an affidavit from a similarly situated worker, Arnoldo Paredes. Mr. Paredes says he also worked as a laborer for Defendants for part of the time in which Plaintiff worked for the Defendants. *See* Paredes Aff. ¶¶ 2-3, ECF No. 19-8. He claims he worked the same hours as Plaintiff and was paid at a higher flat rate than Plaintiff: $140 per day, regardless of hours, in violation of state minimum wage laws and FLSA overtime provisions. *Id.* at ¶¶ 9, 11-12, 15.

Defendants contend Mr. Paredes' affidavit does not support conditional certification because it is "rife with boilerplate statements identical to Serrano's." Def. Opp. Br., 3, ECF No. 22. It is true that portions of Mr. Paredes' affidavit are the same as Mr. Serrano's affidavit, including allegations that he was not given a wage notice when hired, that Mr. Rivera was responsible for payment practices, his work schedule, the way workers were paid, and his allegations as to the Defendants' common scheme. *See id.* at ¶¶ 5, 8, 9, 14-15. But attestation as to the same facts in these sections tends to support commonality among a collective of employees, not to counsel against such a finding. Moreover, where Mr. Paredes' individual experiences diverge from Plaintiff's, he notes those with specificity. For instance, he alleges he was paid more than Plaintiff and that his pay structure changed during the course of his employment, going from $140 a day to $150 a day in March of 2020. *Id.* at ¶ 11. He also does not allege he was terminated in retribution for complaints about payment conditions as Plaintiff does, instead only alleging he got into an argument with Mr. Rivera over work safety conditions

in 2019. *Id.* at ¶ 19.  These differences and the specificity of the affidavit make it more than just a rote re-assertion of unspecific conclusory allegations.

Defendants claim that this motion for conditional certification is similar to the one denied in *Shibetti. See Shibetti v. Z Rest., Diner & Lounge, Inc.,* No. 18-CV-856, 2019 U.S. Dist. LEXIS 150715 (E.D.N.Y. September 3, 2019).  In *Shibetti*, two Plaintiffs filed for conditional certification under the FLSA alleging, among other things, that they were paid lower wages than required under the FLSA. *Id.*  The Plaintiffs were the only ones to submit affidavits.  Their only allegations regarding a "common practice" affecting other similarly situated employees was: "During my employment, I observed [the Defendant] treating other employees the same way, including not providing them with any paperwork or paychecks, and docking their pay for various reasons." *Id.* at *8.  I found in *Shibetti* that this was insufficient to sustain a conditional certification motion, noting, "Plaintiffs do not provide any details regarding their alleged observations – they do not provide any names, dates, or circumstances to give a factual basis for their statements…Plaintiffs do not state that they talked to similarly-situated persons nor do Plaintiffs provide any affidavits or declarations from potential class members." *Id.* at *11-12.

Here, Plaintiff does state he spoke to similarly situated persons.  He says he spoke to Mr. A about his similar experience. Serrano Aff. ¶ 19-21, ECF No. 19-7.  Mr. Paredes says Plaintiff spoke with him about the long hours and low wages. Paredes Aff. ¶ 17, ECF No. 19-8.  And, Mr. Serrano also says he spoke to three workers, all legal residents, who told him they were terminated when they asked about being paid "on the books." Serrano Aff. ¶ 18, ECF No. 19-7. Additionally, both Mr. Serrano and Mr. Paredes say they personally observed the other workers being paid in cash and described the process of that payment: "[Mr. Rivera] would call the workers one at a time, and ask how many days he worked for the week and pay them

accordingly." Serrano Aff. ¶¶ 14, 16; Paredes Aff. ¶ 13-14.  While these descriptions do not detail things like the names of these other workers or when or where these conversations and observations occurred, they are far more specific than those in *Shibetti* and give a factual basis for the Plaintiff's claims.

Plaintiff also, unlike in *Shibetti,* does provide an affidavit from a potential collective member who corroborates many of Mr. Serrano's claims.  As discussed, Mr. Paredes' affidavit is slightly different with regard to his payment structure and interaction with Mr. Rivera but supports Mr. Serrano's overall claims about the hours employees worked and how they were paid by Defendants.

What is required to conditionally certify a collective under the FLSA is a "minimum level of detail regarding the contents of those conversations or observations [that the FLSA claim is based upon]." *Reyes,* 2015 WL 4622587 at *2.  Plaintiff has detailed in his submissions the contents of his conversations with Mr. A and the legal resident workers he spoke with, the details of his and Mr. Paredes' observations of the payment of the other workers, as well as his and Mr. Paredes' own similar experiences as employees of Defendants. The combination of these allegations is a sufficient "modest factual showing" that Plaintiffs and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."

The Defendants argue that Plaintiff's allegations are untrue, citing to both noise ordinances that would prevent workers from working until 9 p.m. and a lack of business to sustain such hours. *See Def. Opp. Br.*, 2-3, ECF No. 22.  Defendants will have the opportunity to litigate such points at a later time.  In step two of the certification process in an FLSA action, should the Court find that potential opt-in plaintiffs are not in fact similarly situated to Plaintiff,

on a fuller record, then the Court may decertify the collective action and the opt-in plaintiffs' claims could be dismissed without prejudice. *Myers*, 624 F.3d at 555.

## II. Notice Should Be Provided To "All Current and Former Laborers Who Performed Tree Removal and/or Outdoor Maintenance and Were Employed by the Defendants" During the Six Years Preceding February 9, 2021

### a. Collective Definition

Defendants argue in the alternative that, should the Court grant conditional certification, it should find the proposed collective to be overly broad. Defendants' counsel, however, cites in its brief to a collective definition that is not proposed by Plaintiff in this case.

Plaintiff seeks to define the collective as "all current and former non-exempt employees at C.R. Landscaping and Tree Service" over the authorized period. Pl. Am. Compl., ¶ 36, ECF No. 17. He claims his affidavit supports this definition, and claims "that he, and other employees performed the same or similar job duties, were subject to the same unlawful policies, and were not paid minimum wage or overtime pay at the time-and-one-half rate for all hours they worked in excess of 40 per work week while employed by Defendants." Pl. Br., 13, ECF No. 19-9.

"Courts in this Circuit have commonly authorized the sending of collective action notices where Plaintiff includes some probative information regarding similarly situated employees…" *Qing Gu v. T.C. Chikurin, Inc.,* No. 13-CV-2322, 2014 WL 1515877, 2014 U.S. Dist. LEXIS 53813 at *3 (E.D.N.Y. Apr. 17, 2014). Therefore, the question the Court must decide at this stage is to what groups has Plaintiff provided probative information that similarly situated employees exist within those groups.

Plaintiff's complaint establishes that he worked as a laborer for Defendants. Pl. Am. Compl. ¶ 24, ECF No. 17. He claims his job involved tree removal and outdoor maintenance. Serrano Aff., ¶ 3, ECF No. 19-7. His allegedly long work schedule, which would have entitled

him to overtime pay, was shared by the team of employees he worked with, who also performed outdoor maintenance and tree removal services. Pl. Am. Compl. ¶ 25, ECF No. 17.  Mr. Paredes, who alleges similar unlawful treatment, worked for Defendants as a laborer who performed tree removal and outdoor maintenance. Paredes Aff. ¶ 3, ECF No. 19-8.

Defendants admit Serrano and Paredes were employed but claim they were employed only as landscapers, not tree removal specialists.  Therefore, the Defendants argue, notification should be limited to just landscapers.  Again, however, at the conditional certification stage the court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." *Hamadou* 915 F. Supp. 2d at 665.  Plaintiff sufficiently alleges the class affected included laborers who worked on tree removal and outdoor maintenance because he and Mr. Paredes claim that they performed those jobs as did others who were treated in a similar fashion.  If that is untrue and, on a fuller record, the Court finds those who performed tree removal are not similarly situated to Plaintiff, then the Court may take action to de-certify at that point.

Based on the submissions by Plaintiff, the only collective of individuals the Court could reasonably infer were subjected to this alleged policy of payment below the minimum wage and/or non-payment of overtime wages is "all current and former laborers who performed tree removal and/or outdoor maintenance and were employed by the Defendants" during the approved period.  I recommend this be the group to receive notice.

### b.  Timeframe

The timeframe of employment under which to conditionally certify the proposed collective is also in dispute.  The FLSA has a two year-statute of limitations except where willful violations occur, where it is three years. *See* 29 U.S.C. §255(a).  "At the conditional certification

stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.,* 14-CV-1647, 2015 WL 6442545, 2015 U.S. Dist. LEXIS 144527, at *5 (E.D.N.Y. Oct. 23, 2015) (collecting cases). The New York Labor Law has a six-year statute of limitations. New York Labor Law §198(3).

Plaintiff argues, because his complaint encapsulates both FLSA claims and NYLL claims, that notice should be sent to any collective member employed within six years of the filing of the amended complaint. *See* Pl. Br., 15-17, ECF No. 19-9.  Defendants, meanwhile, argue that notice should only be sent to collective members who worked for Defendants within three years of the complaint, because that is the statute of limitations for willful FLSA violations and this is an FLSA conditional certification. *See* Def. Opp. Br., 8-10.

Both the Eastern and the Southern District have held, in circumstances like this, it "promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims. *Garriga v. Blonder Builders, Inc.*, No. 17-CV-497, 2018 U.S. Dist. LEXIS 171887 at *19-20 (E.D.N.Y Sept. 28, 2018) (*citing D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2012 WL 613481, 2012 U.S. Dist. LEXIS 175452 at *1 (E.D.N.Y. Dec. 11, 2012); *Lazo v. Queens Health Food Emporium, Inc.,* No. 11-CV-5848, 2012 WL 2357564, 2012 U.S. Dist. LEXIS 85778 at *3 (E.D.N.Y. June 20, 2012); *Moore v. Eagle Sanitation, Inc.,* 276 F.R.D. 54, 59 (E.D.N.Y. 2011); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114, 132 (E.D.N.Y. 2011); *Schwerdtfeger v. Demarchelier Mgmt, Inc.*, No. 10-CV-7557, 2011 WL 2207517, 2011 U.S. Dist. LEXIS 60338 at *6 (S.D.N.Y. June 6, 2011); *Klimchak v. Cardrona, Inc.*, No. 09-CV-4311, 2011 WL 1120463, 2011 U.S. Dist. LEXIS 30652 at *7 (E.D.N.Y. Mar. 24, 2011); *Cano v. Four M. Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, 2009 U.S. Dist. LEXIS 7780 at *8 (E.D.N.Y. Feb. 3, 2009)).

Here, Plaintiff alleges a pattern of violations to the NYLL including paying workers below the minimum wage, failing to pay overtime compensation at the legal rate, failing to pay a "spread of hours" premium as required under the NYLL, failing to properly advise workers of rights, failing to provide wage statements, and failing to keep accurate and true records including payroll records. *See* Am. Compl., ¶¶ 73-80, ECF No. 17.  Because of the alleged NYLL violations, I believe it would promote judicial economy to send notice to all members of the collective over the six-year period since this complaint was filed, even though some individuals who receive the notice may only have timely NYLL claims. I recommend the Court order a six-year notice period.

Additionally, Defendants argue equitable tolling should not apply.  In FLSA cases, to calculate the statute of limitations period, courts generally begin counting back from the date of the conditional certification order because the statute of limitations on FLSA claims runs until a plaintiff consents to join the action. *See* 29 U.S.C. §256; *Garriga*, 2018 U.S. Dist. LEXIS 171887 at *20 (*citing Ritz v. Mike Rory Corp.*, No. 12-CV-367, 2013 WL 1799974, 2013 U.S. Dist. LEXIS 67840, at *3 (E.D.N.Y. April 29, 2013).  Sometimes, the Court will grant equitable tolling, allowing for the statute of limitations period to be calculated instead from the date of the named Plaintiff's complaint.  However, whether Plaintiff and opt-in plaintiffs meet the standard for equitable tolling will be a fact-specific, and so courts "frequently permit notice to be keyed to the…period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (*quoting in part Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)).  This seems the prudent approach here to avoid a situation where notice is not supplied to a potential opt-in

plaintiff who would later be found eligible for equitable tolling of the statute of limitations. Therefore, I recommend notice be keyed to the six-year period prior to the date of the filing of the amended complaint as requested by Plaintiff.

### III.    The FLSA Notice Should Be in Accordance With the Following

Neither the FLSA nor any court has expressly outlined what form court-authorized notice should take or what provisions the notice should contain.  *See Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) ).  It is well settled, however, that "[t]he form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court."  *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007); *see also Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360(RRM)(LB), 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.") (internal quotation marks omitted).

Defendants argue the current proposed notice requests inherently private information from potential opt-in plaintiffs, that opt-in timing should be limited to 45 days instead of the 60 days proposed, that no reminder notice should be sent out, and that various language within the notice should be altered or removed.  I will address each of these items in turn.

### a.  Dissemination of the Notice

Plaintiff requests authorization to disseminate the notice in all relevant languages via "mail, email, and/or text message, or social media chat, to all potential members of the collective." Pl. Br., 18, ECF No. 19-9.

"Courts in the Second Circuit have permitted dissemination of notice by mail, email, and text message 'where, as here, the nature of the employer's business facilitated high turnover rate among employees.'" *Chui v. Am. Yuexianggui of LI LLC*, CV 18-5091 (SJF) (AKT), 2020 WL 3618892, at *20 (E.D.N.Y. July 2, 2020) (quoting *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)).  A Plaintiff may "deviate from the traditional methods [of mail, email, and text message] generally accepted by courts sitting in this Circuit for disseminating notice to the putative collective members" where Plaintiff provides "justification" to do so. *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421, 2021 WL 4502479, 2021 U.S. Dist. LEXIS 189132 at *30 (E.D.N.Y. Sept. 30, 2021) (*quoting Chui v. Am. Yuexianggui of Li LLC*, No. 18-CV-5091, 2020 WL 3618892, 2020 U.S. Dist. LEXIS 117296, at *10 (E.D.N.Y. July 2, 2020)).  While the "COVID-19 public health crisis favors some form of electronic dissemination," a Plaintiff still must provide justification why social media chat might reach some plaintiffs who would not be reached by text message or email. *Panora v. Deenora Corp.*, No. 19-CV-7267, 2020 WL 7246439, 2020 U.S. Dist. LEXIS 230967, at *5 (E.D.N.Y. Dec. 9, 2020).  Plaintiff has provided justification here to use social media, stating "the general laborer industry is a transient industry..." *See* Pl. Br., 18, ECF No. 19-9.  Given the transient nature of the conditional collective, there is a higher probability there are potential opt-in plaintiffs without stable access to a computer or a phone or whose phone number has changed since their time working for the Defendants.

Therefore, I recommend Plaintiff be permitted to use mail, email, text message, and social media chat to disseminate the notice in all relevant languages.

**b. Production of Identifying Information**

To effectuate the conditional certification notice, Plaintiff asks the Court to order Defendants to turn over, for all members of the collective, last known mailing addresses, telephone numbers, email addresses, WhatsApp, WeChat, and/or Facebook usernames, work location, dates of employment, employment positions, and all known languages spoken. *Id.* at 17. Defendants argue that much of the information is "inherently private" and that courts have held such information need not be produced. *See* Def. Opp. Br., 13, ECF No. 22.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective action members." *Tanski v. AvalonBay Cmtys., Inc.*, No. 15-CV-6260, 2017 U.S. Dist. LEXIS 112506 at *50 (E.D.N.Y. Mar. 31, 2017) (*quoting Velasquez v. Digital Page, Inc.*, No. 11-CV-3892, 2014 WL 2048425, 2014 U.S. Dist. LEXIS 68538, at *15 (E.D.N.Y. May 19, 2014) (*citing Puglisi v. TD Bank, N.A.*, No. 13-CV-637, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011); *In re Penthouse Executive Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, 2010 U.S. Dist. LEXIS 114743, at *5-6 (S.D.N.Y. Oct. 26, 2010))).

Though social media is a newer means of contact, many courts that have considered the question have found Defendants should turn over social media contact information where they have it if contact via social media chat has been approved by the Court. *See Quiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020) (ordering the production of social media information); *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18-CV-5448, 2019 WL 6002371, 2019 U.S. Dist. LEXIS 198794, at *4 (S.D.N.Y. Nov. 14, 2019) (ordering the production of WhatsApp, WeChat ID and/or Facebook usernames); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-CV-04661, 2019 WL 3759126, 2019 U.S. Dist. LEXIS 127895, at *12 (S.D.N.Y.

July 25, 2019) (ordering the production of last known WhatsApp, WeChat, and/or Facebook usernames); *Lujun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220, 2019 U.S. Dist. LEXIS 154246, at *62 (S.D.N.Y. Sept. 6, 2019) (ordering the production of last known WhatsApp, WeChat and/or Facebook usernames).

Therefore, I recommend the Court order Defendants to turn over a list, in electronic format, of the last known mailing address, phone number, email address, WhatsApp, WeChat, and/or Facebook usernames, and the work location and dates of employment of employees who worked as laborers performing landscaping and/or tree maintenance for the Defendants over the six years prior to February 9, 2021. Should the Defendants not know some of that information for every collective member, they need not turn it over, but they still must turn over what they do know. Given that Plaintiff claims Spanish was spoken by similarly situated employees, Defendants should only provide a known language for the potential collective members if that individual is known to read/speak neither English nor Spanish. Plaintiffs are permitted to provide notice in English, Spanish, and/or any language specified in Defendants' production. I recommend Defendants be ordered to produce such information within 14 days of the opinion of this Court.

### c. Opt-In Notice Timing

Defendants request that potential opt-in plaintiffs have 45 days from the mailing of the notice to opt-in, rather than the 60 days Plaintiff asks for. A period of 60 days is "common practice under the FLSA." *Cohan v. Columbia Sussex Management, LLC*, No. 12-CV-3203, 2013 WL 8367807, at *12 (E.D.N.Y. Sept. 19, 2013). Defendants have not provided any rationale for departing from this common practice and have not supported their request to

provide potential opt-in plaintiffs less time to weigh their legal rights. As such, I recommend the opt-in period be 60 days from the mailing of notice.

### d.  Reminder Notice

Plaintiff would like to also send a reminder notice to potential opt-in plaintiffs during the 60-day opt-in window after the original notice was sent.  Defendant contends the reminder notice is unnecessary and could be interpreted as encouragement by the Court to join the lawsuit.

"[T]he weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA." *Meo v. Lane Bryant, Inc.*, No. 18-CV-6360, 2019 WL 5157024, 2019 U.S. Dist. LEXIS 174552, at *39 (E.D.N.Y. Sept. 30, 2019) (citing cases). Because Plaintiff is sending the reminder notice, not the Court, there seems little danger that a potential opt-in plaintiff would construe the notice as the Court encouraging them to join the litigation. Additionally, the notice itself says in all capital letters, "The Court has taken no position in this case…" which should assuage Defendants' concerns. *See* Prop. Notice, ECF No. 19-5.

I recommend the Court authorize circulation of a reminder notice.

### e.  Contents of the Notice

#### 1. Discovery Participation Language Appears Proper

Defendants argue that the notice provided should alert recipients to their own potential involvement in discovery including being required to provide documents, answer interrogatories, sit for depositions, or testify in court. Def. Opp. Br., 10, ECF No. 22.  Plaintiff's proposed notice already says, "Most likely, if you choose to join this lawsuit, you will be required to provide information and answer questions relating to your employment with the Defendants. You may be required to testify at a deposition or at trial, respond to written questions, and produce documents

relevant to the case…" Prop. Notice, ECF No. 19-5.  As such, the notice already contains the provisions requested by Defendants, and I recommend the Court find the discovery language in it proper.

### 2. No Retaliation Language Need Not Be Removed

Defendants also argue that any anti-retaliation language should be removed as "there is no evidence of retaliation." Def. Opp. Br., 10, ECF No. 22.  Presumably, Defendants are arguing against the inclusion of the language in the notice in subsection 9, which reads "*If I join, will there by any impact on my employment?* No. Federal law prohibits Defendants from discharging or in any manner retaliating against you because you join this case…" Prop. Notice, ECF No. 19-5.  I see no issue with informing potential opt-in plaintiffs that federal law prohibits retaliation, particularly when some of the opt-in plaintiffs may currently work for Defendants.  Further, the Plaintiff in this case does allege retaliation by the Defendants.  As such, I believe the retaliation language is proper.

### 3. Consent to Sue Form

Finally, Defendants contend that the consent to sue form asks for too much information from potential opt-in plaintiffs by asking for an address, email, telephone number, the location in which they worked, and their dates of employment. Def. Opp. Br., 11.  Instead, Defendants argue the only information required on the consent form should be the name, address, and signature of the opt-in plaintiff. *Id.* at 11-12.  Defendants are concerned requiring more information would allow the consent form to be used as a discovery device by Plaintiff's counsel, as opposed to merely a way of consenting to join the action. *Id.* at 11.

To Defendants' point, there may be opt-in plaintiffs who desire to opt-in but to have alternative counsel.  To do so under this consent form, they would be required to disclose all this

information to Plaintiff's counsel, some of which Plaintiff's counsel will undoubtedly have because he sent the notice, but some of which he may not.  Before giving that information to Plaintiff's counsel, these opt-in plaintiffs should have the opportunity to consult with their chosen counsel.  As such, I recommend the consent to sue form be amended to only request an opt-in plaintiff's signature, name, and address.

## CONCLUSION

In conclusion, I recommend the Plaintiff's motion for conditional certification be GRANTED IN PART AND DENIED IN PART in accordance with this report and recommendation.  I recommend the conditional collective be defined as "all current and former laborers who performed tree removal and/or outdoor maintenance and were employed by the Defendants within 6 years of February 9, 2021."  I recommend Defendants have 14 days to produce an electronic list in compliance with this opinion to Plaintiff.  I recommend Plaintiff then have 14 days to send the notice, which may be accomplished by mail, email, text message, or social media chat.  I also recommend the consent form be amended in accordance with this opinion.  Additionally, I recommend opt-in plaintiffs have 60 days from the sending of the original notice to opt-in, and recommend Plaintiff be permitted to send a reminder notice during that period.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections. Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir.

2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**


_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated:  Central Islip, New York
         January 20, 2022

26